# IN THE UNITED STATES DISTRICT COURT
# THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| DIANNE R. BEARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 5:15-CV-01788-KOB |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION & ORDER**

This matter comes before the court on the claimant Dianne R. Beard's "Motion for Entry of an Order of Remand Pursuant to the Sixth Sentence of 42 U.S.C. § 405(g)." (Doc. 10). In her motion, Ms. Beard submits new evidence to this court, not previously considered by the ALJ or Appeal's Council. For the reasons below, the court GRANTS Ms. Beard's motion to remand.

## **PROCEDURAL HISTORY**

On June 6, 2014, the ALJ issued his decision in this case, finding that Ms. Beard was not disabled, as defined by the Social Security Act. (R. 22). On June 18, 2014, Ms. Beard requested that the Appeals Council review the ALJ's decision and attached notes from Good Samaritan Health Clinic dated June 23, 2014. (R. 9). The Appeals Council denied Ms. Beard's request for review of the ALJ's decision on August 14, 2015, stating that the notes related to a time period after the ALJ's decision. (R. 2).

Ms. Beard hired new counsel Seth B. Thompson on October 6, 2015. (Doc. 10-1). At her new counsel's request, Dr. Alan D. Blotcky performed a psychological evaluation of Ms. Beard on October 12, 2015. The next day, Mr. Thompson filed an appeal in this court on October 13,

1

2015 on Ms. Beard's behalf.  On March 15, 2016, Ms. Beard filed her motion to remand pursuant to sentence six currently before the court and attached as exhibits Dr. Blotcky's psychological evaluation report and his Medical Source Statement (MSS). (Doc. 10).

### DR. BLOTCKY's EVALUATION AND MSS

As a part of Dr. Blotcky's psychological evaluation of Ms. Beard on October 12, 2015, he conducted WAIS-IV IQ testing and gave an opinion regarding her mental ability to do work-related activities. According to Dr. Blotcky, Ms. Beard received the following scores:

> Verbal comprehension Index score of 63;
> Perceptual Reasoning Index score of 65;
> Working Memory Index score of 66;
> Processing Speed Index score of 65;
> Full Scale IQ score of 59.

Based on these scores, Dr. Blotcky stated that Ms. Beard's "intellectual abilities fall in the "Mildly Retarded range," and that her "intellectual limitations are a lifelong problem."  (Doc. 10-2 at 2-4).

Dr. Blotcky also found that her abstract thinking was "poor"; her affect was restricted; some of her "verbalizations were morbid in content"; and her insight was "limited."  He stated that Ms. Beard "must be involved in psychiatric treatment with a psychiatrist and psychologist," and that her treatment should include medication and individual counseling. (Doc. 10-2 at 4).

On December 12, 2015, Dr. Blotcky executed a MSS based on the results of the psychological examination conducted two months earlier in October. Dr. Blotcky found that Ms. Beard was "seriously limited" in her ability to do unskilled work, explaining that she had "noticeable difficulty (e.g. distracted from job activity from 11 to 20 per cent of the workday or work week)."  Specifically, Dr. Blotcky found that Ms. Beard was seriously limited in her ability to understand, remember, and carry out short simple instructions; maintain attention for two hour

segments; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of breaks; deal with normal work stress; set realistic goals and make plans independently of others; travel in unfamiliar places; and use public transportation. He also assessed that Ms. Beard was unable to meet competitive standards in remembering work-like procedures; completing a normal workday and workweek without interruptions from psychological symptoms; accepting instructions and responding appropriately to criticism; responding appropriately to changes a in routine work setting; understanding, remembering, and carrying out detailed instructions; and interacting appropriately with the general public. Dr. Blotcky indicated that Ms. Beard's "psychiatric condition exacerbate[s] [her] experience of pain or any other physical symptom." Based on his findings, he stated that Ms. Beard would be absent from work more than four days per month. (Doc. 10-2 at 5-10).

## STANDARD OF REVIEW

When the claimant presents new evidence first to the district court, the court cannot consider the new evidence for the purposes of a *sentence four* remand because "a reviewing court is limited to the certified administrative record in examining the evidence"; however, a federal court should remand a case to the Commissioner to consider such evidence if a claimant makes a sufficient showing under *sentence six*.[1] *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267-68 (11th Cir. 2007); *see also Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir. 1986) ("Although the district court does not examine evidence that was not considered during administrative proceedings, it should remand a case to the Secretary to consider such evidence if a claimant makes a sufficient showing" under sentence six).

---

[1] A "sentence four" remand is based on agency error and a "sentence six" remand is based on new and material evidence. *See Jackson v. Chater*, 99 F.3d 1086, 1089 (11 th Cir. 1996).

To obtain a remand under sentence six of 42 U.S.C. § 405(g), a claimant must establish that "(1) the evidence is new and noncumulative; (2) the evidence is 'material,' such that relevant and probative evidence creates a reasonable possibility of changing the administrative result, and (3) good cause exists for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986*); see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1263, 1267 (11th Cir. 2007) ("A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention to the district court.").

## DISCUSSION

1. New, Non-cumulative Evidence

Ms. Beard contends that evidence contained in Dr. Blotcky's reports is new and noncumulative. This court agrees. The psychological evaluation report and MSS are new evidence because Ms. Beard submitted them for the first time to the district court. Neither report existed at the time of the ALJ decision nor did they exist at the time of the Appeals Council's review. (Doc. 10 at 1-2, Doc. 10-2).

Dr. Blotcky's psychological evaluation report and MSS are also non-cumulative because they are not contained in the administrative record. *See Cannon v. Bowen*, 858 F. 2d 1541, 1546 (11th Cir. 1988) (holding that a treating physician's opinion of total disability and a vocational expert's report were new, non-cumulative evidence not in the record); *see also Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (holding that the only comprehensive psychological evaluation of the claimant's condition constituted new, non-cumulative evidence).

Also, the new evidence relates to the time period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b), [10 C.F.R. 416.1470(b)]; *see also Falge v. Apfel*, 150 F.3d 1320,

1323 (11th Cir. 1998). Dr. Blotcky assessed that Ms. Beard's intellectual disability was a lifelong condition, noting that Ms. Beard quit school in the ninth grade and was in special education classes. Dr. Blotcky's finding that Ms. Beard has significant intellectual deficits, coupled with no evidence of a trauma that caused such deficits later in life, supports that evidence of her intellectual deficits relates back to the relevant time period before the ALJ's decision.

While the record in this case does contain a Psychiatric Review Technique completed by a Disability Determination Service non-examining medical consultant, that technique does not assess Ms. Beard's IQ level. (R.69-74 ). The consultant merely concluded that Ms. Beard's disorder did not limit her activities of daily living and social functioning; mildly limited her in maintaining concentration, persistence, and pace; and caused no episodes of decompensation. (R. 73).

In contrast, Dr. Blocky, an examining physician, completed the psychological evaluation report and MSS. He assessed her verbal comprehension, perceptual reasoning, working memory, processing speed, and IQ; additionally, Dr. Blotcky's report contains the only recorded diagnoses of mild mental retardation, which he stated was a "lifelong problem." (Doc. 10-2). Because the administrative record does not currently contain evidence regarding Ms. Beard's intellectual deficits, and this information relates back to the relevant time period, the court agrees with the claimant that the evidence is new and non-cumulative.

2. Material Evidence

Ms. Beard argues that evidence is material if a reasonable possibility exists that the new evidence would change the administrative result. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Ms. Beard also claims that the new evidence has a "reasonable possibility of changing the administrative outcome" because it could establish qualification of Listing

12.05(C), or alternatively, could have a rippling effect on the ALJ's disability determination via the sequential evaluation process. (Doc. 10).

The Commissioner argues that evidence must be relevant and probative to be material. The Commissioner specifically contends that Ms. Beard's new evidence is immaterial because the claimant did not initially allege a corresponding impairment, and therefore, would not have changed the administrative outcome, *citing Neal v. Astrue*, No. CV 111-188, 2012 WL 6803960, at *4 (S.D. Ga. Dec. 5, 2012), *report and recommendation adopted*, 2013 WL 85223, at *1 (S.D. Ga. Jan. 7, 2013) (declining to remand under sentence six of 42 U.S.C. § 405(g) for consideration of a glaucoma diagnosis because claimant never alleged vision problems at the administrative level and, thus, the evidence did not create a reasonable possibility of changing the administrative result).

This court agrees that new evidence must also be relevant and probative to be material; however, this court is not bound by the *Neal* decision, especially when that decision contradicts the Eleventh Circuit's decision in *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).[2] The claimant in *Cherry* initially alleged arthritis, bursitis, phlebitis, high blood pressure, and accompanying pain. Because Cherry's new evidence, a comprehensive psychological evaluation of Cherry's mental condition, was the only evidence that suggested the existence of a non-exertional impairment, the court found a reasonable possibility existed that new evidence would change the administrative outcome. *Id*. Therefore, this court does not agree that a claimant must initially allege an impairment that directly corresponds to the new evidence for that evidence to be material.

---

[2] Furthermore, unlike the claimant in *Neal*, who developed an impairment *after* the ALJ's decision, Dr. Blotcky assessed Ms. Beard's impairment as a "lifelong" condition from which she struggled prior to and at the time of ALJ's decision.

This court finds that Ms. Beard's psychological evaluation report and MSS are material because a reasonable possibility exists that, if the ALJ had that evidence before him, the administrative result would have changed. Ms. Beard's IQ scores that Dr. Blotcky's reported may establish that the claimant meets the criteria for presumptive disability under Listing 12.05(b), which requires a valid IQ score of 59 or less, or under Listing 12.05(c), which requires (1) a valid IQ score between 60 and 70; (2) an additional impairment that further limits her work-related function; and (3) a "significantly sub-average general intellectual function with deficits in adaptive functioning" that she exhibited prior to age 22.[3] Dr. Blotcky determined that the claimant had a full scale I.Q. score of 59 (Doc. 10-2 at 2); the ALJ already determined that her degenerative disc disease was a severe impairment (R.17-18); and Dr. Blotcky found that the claimant's mild mental retardation was a "lifelong" condition (Doc. 10-2 at 3). As such, a reasonable probability exists that Dr. Blotcky's psychological evaluation report and MSS would have changed the administrative result.

The Commissioner argues that neither the psychological evaluation nor the MSS establish presumptive disability under Listing 12.05(c) because the claimant's IQ is not conclusive of intellectual ability and because the claimant's intellectual deficits in adaptive functioning are not sufficient. (Doc. 10-2). However, the question is not whether the claimant *will* conclusively meet the requirements of Listing 12.05(c), but rather, whether the new evidence provides a reasonable possibility of meeting Listing 12.05(c), and, therefore, *could* change the administrative result. Therefore, this court finds that the psychological evaluation report and MSS are material because a reasonable possibility exists that the new evidence would change the administrative outcome.

---

[3] Adaptive functioning refers to progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of the same age. See Social Security Administration Program Operations Manual System DI 24515.056.D.2. (https://secure.ssa.gov/poms.nsf/lnx/0424515056).

3. Good Cause Evidence

Ms. Beard argues that the good cause requirement is satisfied because the proffered evidence did not exist at the time of the administrative proceedings. *See Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985). Specifically, Ms. Beard contends that, because the psychological evaluation post-dated the ALJ's decision, the evidence did not exist, and therefore, good cause existed for not submitting the evaluation earlier. This court agrees.

The Commissioner argues that the mere fact that Ms. Beard had this evidence created after the Appeals Council's decision does not absolve her from providing good cause for her failure to seek it previously, citing *Overton v. Colvin*, No. 5:14-CV-00350-JEO, 2015 WL 3407529, at *11 (N.D. Ala. May 27, 2015). However, the Commissioner incorrectly cites *Overton*, failing to acknowledge that Judge Ott granted a motion to alter his judgment and changed his ruling, holding that "the weight of the Eleventh Circuit authority does seem to indicate that good cause requirement is satisfied if the new evidence in question did not exist at the time of the administrative proceedings. . . ." (Doc. 30 in 5:14-cv-350-JEO entered on July 21, 2015); *see also Tolbert v. Colvin*, 2014 WL 3889476, *2 (N.D. Ala. Aug. 4, 2014 (finding that good cause exists for failing to present new evidence when it did not exist at the time of the administrative process).

The good cause requirement "was designed to prevent claimants from attempting to withhold evidence 'with the idea of "obtaining another bite of the apple" if the Secretary decides that the claimant is not disabled.'" *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987) (quoting *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 834 (3rd Cir. 1984)). Ms. Beard obtained new counsel on October 6, 2015, who advised her to see Dr. Blotcky for a psychological evaluation. His evaluation and subsequent results were not in existence during the

administrative process and could not be "withheld" in hopes of obtaining another bite at the apple.

The Commissioner argues that "there is absolutely no statutory or decisional authority for the premise that the alleged incompetence of the claimant's first attorney constitutes 'good cause' for remand," citing *Taylor v. Comm'r of Soc. Sec*. 43 F. App'x 941, 943 (6th Cir. 2002). First, this court is not bound by a Sixth Circuit decision. Moreover, in *Taylor*, the proposed "new" evidence presented to the district court existed at the time of the ALJ's hearing, but the attorney did not produce it for whatever reason. In the present case, the "new evidence" was not in existence during the administrative process.

This court agrees with the claimant that a remand in this situation would not present a danger of encouraging claimants to manipulate the administrative process, especially given that Dr. Blotcky's opinion is the *only* opinion assessing Ms. Beard's IQ and the evidence was *not* in existence during the administrative proceedings. Therefore, this court concludes that Ms. Beard had good cause for failing to submit the psychological evaluation report and MSS earlier.

## CONCLUSION

In summary the court concludes that, under Eleventh Circuit precedent, Ms. Beard has shown that Dr. Blotcky's psychological evaluation and MSS are new and non-cumulative, material, and that good cause exists for failing to submit the evidence earlier. Accordingly, the court GRANTS Ms. Beard's sentence six motion to remand (doc. 10). This action is REMANDED to the Commissioner pursuant to 20 C.F.R. § 404.983 for consideration of Dr. Blotcky's psychological examination and MSS.

The court DIRECTS the Clerk to close this case, but the court RETAINS JURISDICTION to re-open this case if the Commissioner files additional findings of fact after remand proceedings.[4]

DONE and ORDERED this 7th day of March, 2017.

_Karon O. Bowdre_
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] When a district court remands a case to the Commissioner under sentence six, the Appeals Council, acting on behalf of the Commissioner, may make a decision, or remand the case to an ALJ with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision. 20 C.F.R. § 404.983. *See also Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007). In a sentence six remand, the statutory provision itself specifically requires the Commissioner to return to the district court to file additional or modified findings of fact after the remand proceedings and, therefore, the court retains jurisdiction over the case throughout the remand proceedings. *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996).